# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JOSE M. BONILLA-SICILIANO, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Civil No. 08-00757-CV-W-FJG |
| | ) Crim. No. 06-00305-01-CR-W-FJG |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

# ORDER

Currently pending before the Court is Bonilla-Siciliano's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255 (Doc. # 1).

## I. BACKGROUND

On September 14, 2006, Jose Bonilla-Siciliano was charged with illegal re-entry by a deported alien in violation of 18 U.S.C. §§ 1326(a) and (b)(2). Bonilla-Siciliano was represented before and during trial by John Lozano. Bonilla-Siciliano was convicted on April 22, 2008, of one count of illegal re-entry by an alien after a two day trial. Bonilla-Siciliano was sentenced on September 3, 2008. During the sentencing hearing, he stated that he had received a copy of the Pre-Sentence Report ("PSR") and he made an objection concerning its accuracy. The Court however, found no grounds on which to sustain the objection. Through counsel, Bonilla-Siciliano also sought a two level reduction for acceptance of responsibility. The Court also denied that objection and sentenced him to seventy months in prison. During the sentencing hearing, Bonilla-Siciliano was advised of his right to file an appeal.

Lozano states in an affidavit that at the conclusion of the sentencing hearing,

Bonilla-Siciliano told him that he did not want to appeal after Lozano told him that he would file the Notice of Appeal. Lozano told Bonilla-Siciliano that he felt that the verdict directing instruction was appealable. Lozano stated that Bonilla-Siciliano told him that he could file the appeal if he wanted to, but "he did not request nor instruct me to appeal."

Bonilla-Siciliano states that on September 3, 2008, Lozano sent him a letter outlining the four bases for the appeal and containing an affidavit for Bonilla-Siciliano's signature. Lozano concludes the letter with the statement: "You left it up to me so I think I'll file the appeal. Meanwhile, take good care of yourself." Bonilla-Siciliano states that he rejected an offer from the Government because he wanted to protect his right to appeal. Bonilla-Siciliano alleges that at the conclusion of the sentencing hearing, Lozano said "I will fight those two points." Bonilla-Siciliano responded, "I'm not worried about those two points." Bonilla-Siciliano alleges that Lozano replied with a grin on his face, "Oh, I will fight it anyways." Bonilla-Siciliano then said, "I could do that 'lil extra time from those two points doing hand-stand push-ups." Bonilla-Siciliano says that everyone had a good laugh and then he was out of the courtroom.

Lozano states in his affidavit that the following weekend he conducted some research and determined that there were no good grounds for an appeal. He then communicated this in a letter to Bonilla-Siciliano on September 9, 2008. The letter states in part:

> "You were right in your view of the appeal. You knew right away what took me several hours of work to realize. Te saludo con respecto. So we won't file the notice. Take good care of yourself, Jose, and write to me from wherever they send you, if you feel like it."

2

Bonilla-Siciliano alleges that Lozano was ineffective for failing to file the Notice of Appeal. After reviewing the parties' briefs regarding the §2255 motion, the Court determined that an Evidentiary Hearing was necessary on Bonilla-Siciliano's claim that his counsel failed to file the Notice of Appeal. On July 22, 2009, the Court appointed counsel to represent Bonilla-Siciliano in anticipation of the Evidentiary Hearing.

An evidentiary hearing was held on February 12, 2010. Counsel for Bonilla-Siciliano first called Jane Brown to testify. Ms. Brown was one of the U.S. Attorneys who prosecuted the underlying criminal case against Bonilla-Siciliano. Ms. Brown testified that she was present at counsel table during the sentencing hearing and she overheard the conversation that took place in Spanish between Bonilla-Siciliano and Lozano immediately after the sentence was imposed. She stated that the conversation lasted approximately 45 seconds. Ms. Brown testified that Lozano said to Bonilla-Siciliano, that he was going to file the appeal. Ms. Brown testified that Bonilla-Siciliano responded that it did not matter to him. She states that Lozano said that there were some points that he wanted to bring up on appeal. She states that Bonilla-Siciliano responded very quickly in Spanish, and used some slang that she did not understand, so she can not truthfully state what he said. (Evidentiary Transcript, pp. 8-9). Ms. Brown testified that she is 90% fluent in Spanish.

Lozano also testified during the Evidentiary Hearing. He confirmed that he had less than a one minute conversation with Bonilla-Siciliano after sentencing and that this was the only in-person consultation he had with Bonilla-Siciliano after sentencing. (Evidentiary Transcript, pp. 18-19). Lozano states he told Bonilla-Siciliano that he was going to appeal and Bonilla-Sicilano told him not to. Lozano states that he explained

3

that there were issues they could raise on appeal at which point Bonilla-Siciliano said he would leave it up to Lozano. (Evidentiary Transcript, p. 19). When asked if Bonilla-Siciliano ever expressly instructed Lozano to file a notice of appeal in this case, Lozano responded: "he left the decision to me, and I didn't care to have that burden, but I took it on." (Evidentiary Transcript, p. 43).

Bonilla-Siciliano also testified during the Evidentiary Hearing. He testified that shortly after the trial, Lozano sent him an affidavit relating to proceeding in forma pauperis on appeal and he signed it, had it notarized and returned it to Lozano. He stated that by signing the letter, he was expressing his desire to appeal the case. (Evidentiary Transcript, p. 48). Bonilla-Siciliano testified that shortly after the sentencing hearing, he was talking with Lozano and told him not to mind the two points because he was more concerned with the whole of the PSI and Lozano said "Don't worry about it. I'm going to appeal those two points. I'll get those two points back." Bonilla-Siciliano testified that he told Lozano in Spanish, I'm not worried about the extra time those two points are going to bring me. (Evidentiary Transcript, p. 49). When asked if he ever instructed Lozano that he did not want to appeal based on the four points listed in the affidavit, Bonilla-Siciliano responded:

A. As a matter of fact, I told him that I didn't think that was all the grounds that I thought he should appeal. And he said don't worry about it, that was just like a notice of appeal, but the direct appeal was going to go over all the grounds, that we were going to discuss it and stuff, so - - .
. . .

Q. Did you ever say to Mr. Lozano you know what, forget about it, it's up to you, whatever you want to do?

A. No, sir

4

Q. So you never left it in Mr. Lozano's - -

A. Never.

Q. – in Mr. Lozano's decision-making authority; is that correct?

A. That's correct, sir.

(Evidentiary Hearing Transcript, pp. 50- 51).

Bonilla-Siciliano was later asked:

Q. So in your mind, was the September 9th letter, the second letter, was that against your express instructions to Mr. Lozano?

A. Yes, sir.

Q. Just to be clear for the purposes of the record, two more questions and then I'm through. Did you ever tell Mr. Lozano that you did not want to appeal?

A. Never.

Q. Did you ever draft a document indicating that you wanted Mr. Lozano to make his own decisions with regard to the appeal?

A. No, sir.

(Evidentiary Transcript, pp. 53-54).

## II. STANDARD

### A. Ineffectiveness of Counsel

To prevail on a claim of ineffective assistance of counsel, Bonilla-Siciliano must show that the attorney's performance fell below an objective standard of reasonableness and that the performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The Court is to adopt an extremely deferential approach in evaluating counsel's performance. Id. 466 U.S. at 689, 104 S.Ct. at 2065-66. "[A] court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See Michel v. Louisiana, 350 U.S. 91,101, 76 S.Ct.158,164, 100 L.Ed.2d 83 (1955)." Id. Additionally, to establish prejudice, Bonilla-Siciliano must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694, 104 S.Ct. at 2068. "Although the two prongs of the 'ineffective assistance' analysis are described as sequential, courts 'do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice.'" United States v. Vesey, No. C06-0075-MWB, 2009 WL 1324076, *5 (N.D. Iowa May 12, 2009) (citing Boysiewick v. Schriro, 179 F.3d 616, 620 (8th Cir. 1999), cert. denied, 528 U.S. 1141, 120 S.Ct. 989, 145 L.Ed.2d 938 (2000)).

### III. DISCUSSION

#### A. Failing to File Notice of Appeal

In Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court considered the question whether an attorney is deficient for not filing a notice of appeal when the defendant has not clearly expressed his thoughts one way or the other. The Court stated:

> In those cases where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, we believe the question whether counsel has performed deficiently by not filing a notice of appeal is best answered by first asking a separate, but antecedent, question: whether counsel in fact consulted with the defendant about an appeal. We employ the term "consult" to convey a specific meaning - advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes. . . . If

6

counsel has not consulted with the defendant, the court must in turn ask a
second, and subsidiary, question: whether counsel's failure to consult with
the defendant itself constitutes deficient performance.  That question lies at
the heart of this case: Under what circumstances does counsel have an
obligation to consult with the defendant about an appeal?
. . .
    We instead hold that counsel has a constitutionally imposed duty to
consult with the defendant about an appeal when there is reason to think
either (1) that a rational defendant would want to appeal (for example,
because there are non-frivolous grounds for appeal), or (2) that this
particular defendant reasonably demonstrated to counsel that he was
interested in appealing. In making this determination, courts must take into
account all the information counsel knew or should have known.

Id. at 478-480.  The Court also held that to show prejudice, "a defendant must

demonstrate that there is a reasonable probability that, but for counsel's deficient failure

to consult with him about an appeal, he would have timely appealed." Id. at 484.

### 1. Did Lozano "Consult" With Bonilla-Siciliano?

In Thompson v. United States, 504 F.3d 1203 (11th Cir. 2007), the Court stated:

    where a defendant has not specifically instructed his attorney to file an
appeal, we must still determine "whether counsel in fact consulted with the
defendant about an appeal." Flores-Ortega, 528 U.S. at 478, 120 S.Ct.
1029. As noted above, adequate consultation requires informing a client
about his right to appeal, advising the client about the advantages and
disadvantages of taking an appeal, *and* making a reasonable effort to
determine whether the client wishes to pursue an appeal, regardless of the
merits of such an appeal.

Id. at 1207.  In Thompson, the attorney notified his client immediately after sentencing

that he had a right to appeal and added only that he did not think it would be successful.

The defendant then replied "fine."  The exchange lasted only a few minutes.  The Court

found that counsel had not notified the defendant of the advantages and disadvantages

of filing an appeal, nor that counsel was obligated to file an appeal if that is what the

defendant wanted.  The Court concluded that the exchange between counsel and his

7

client was not adequate because no information was provided to the defendant from "which he could have intelligently and knowingly either asserted *or* waived his right to an appeal. The record is clear that no reasonable effort was made to discover Thompson's informed wishes regarding an appeal." Id. at 1207. The Court also determined that the attorney's failure to consult with his client also prejudiced the client, because there is a reasonable probability that Thompson would have exercised his right to appeal.

In Scales v. United States, No. 06-1138, 2008 WL 5114267 (W.D.Pa. Nov. 25, 2008), the Court considered whether counsel was ineffective for failing to file a notice of appeal. The defendant in that case requested that his attorney file an appeal immediately after sentencing based on the fact that defendant's decision to plead guilty was based on false promises. The attorney sent the defendant a letter outlining the steps that needed to be taken in order to file an appeal, but the attorney said he would not file the appeal himself. In concluding that his counsel was not ineffective, the Court stated:

> [The attorney's] letter informed petitioner of the right to appeal, informed him that no appeal would be filed unless he did so, informed him who to notify to perfect the appeal, and informed him about the deadline for filing the appeal. Petitioner, however, failed to file a notice of appeal on his own, and was not prejudiced. See United States v. Morales-Morales, No. CRIMA02-2008202KHV, 2005 WL 3845347 at *7 (D.Kan. Jan. 7, 2005)(even if the defendant did not waive rights to post-conviction relief, the defendant was not prejudiced if he has "ample time to file an appeal on his own behalf and counsel specifically advised defendant of his right to do so.").

Id. at *24.

In the instant case, the testimony is consistent that the exchange between Lozano and Bonilla-Siciliano lasted less than a minute. It also appears that there was some

8

confusion as to whether Bonilla-Siciliano was telling Lozano that he did not care about not getting the two point reduction for acceptance of responsibility or whether he was saying he did not care about whether Lozano filed the appeal. The Court does not find that Lozano adequately consulted with Bonilla-Siciliano in the less than one minute conversation that took place immediately after sentencing. As the Court stated in Thompson, "adequate consultation requires informing a client about his right to appeal, advising the client about the advantages and disadvantages of taking an appeal, *and* making a reasonable effort to determine whether the client wishes to pursue an appeal." Id. at 1206. Lozano may have informed Bonilla-Siciliano about his right to file an appeal, but he did not present the advantages/disadvantage of filing an appeal or make an effort to find out what Bonilla-Siciliano wanted to do. Instead, Lozano stated that he took that burden upon himself. This is not a decision that Lozano could make. As stated by the Supreme Court in Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), "[a] defendant, . . . has 'the ultimate authority' to determine 'whether to plead guilty, waive a jury trial, testify in his or her own behalf, or take an appeal.'" Id. at 187 (citing Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); Wainwright v. Sykes, 433 U.S. 72, 93, n.1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)). Lozano should have taken more time to discuss the options with Bonilla-Siciliano and determine his client's intentions.

**2. Did Lozano Have a Duty to Consult with Bonilla-Siciliano?**

Finding that Lozano did not consult with Bonilla-Siciliano, the Court must next determine whether Lozano had a duty to consult with his client. This requires the Court to determine if there is a reason to think: "(1) that a rational defendant would want to

appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Roe, 528 U.S. at 480.  The Supreme Court also noted that a highly relevant factor in this inquiry is whether the conviction follows a trial or a guilty plea.  In this case, the conviction followed a trial.  Bonilla-Siciliano specifically stated during the Evidentiary Hearing that he rejected a plea agreement from the Government because he wanted to preserve issues for appeal.  Additionally, throughout the trial, Lozano requested that the Court grant him continuing objections to certain evidence and even made an offer of proof regarding a defense which the Court did not allow into evidence.  Lozano also sent to Bonilla-Siciliano shortly after trial a financial affidavit in support of a Motion to Proceed in forma pauperis on appeal.  The affidavit listed three different issues which Lozano intended to present on appeal.  The affidavit was signed by Bonilla-Siciliano and notarized on April 29, 2008.  All of these factors indicate that Lozano believed at least initially that there were non-frivolous grounds on which to appeal and Bonilla-Siciliano had demonstrated that he was interested in appealing by signing the financial affidavit and rejecting the plea agreement. Additionally, at least as of September 3, 2008, Lozano still believed that there were issues that were worthy of appeal, because he sent Bonilla-Siciliano a letter outlining the four bases for appeal.  The Supreme Court in Roe stated, "[w]e expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal." Id. at 481.

   3.  **Has Bonilla-Siciliano Demonstrated Prejudice?**

The Court also held that "to show prejudice, . . . a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Roe, 528 U.S. at 484. The Supreme Court in Roe stated that the question whether the defendant has made a sufficient showing of prejudice will turn on the facts of the particular case but noted that where there were nonfrivolous grounds for appeal or that the defendant expressed a desire to appeal will often be highly relevant in making this determination. Id. at 485. As discussed above, Lozano had already identified at least four nonfrivious grounds for appeal. Additionally, throughout the trial, he was making objections and offers of proof in anticipation of filing an appeal. Bonilla-Siciliano also had expressed his desire that an appeal be filed by promptly signing and returning the in forma pauperis affidavit to Lozano. It was not until September 9, 2008, (four days before the appeal deadline) that Lozano send Bonilla-Sicilano the second letter stating that he had reconsidered and was not going to file the appeal. However, Lozano failed to explain in the letter how Bonilla-Siciliano could still file the appeal if he choose to do so, what the deadline was or where the Notice of Appeal should be sent. The Court finds that Bonilla-Siciliano has shown that he suffered prejudice by Lozano's failure to file an appeal and there is a reasonable probability that he would have timely appealed if not for Lozano's failure to consult with him.

Accordingly, the Court finds that Bonilla-Siciliano has demonstrated that his counsel was ineffective in failing to file the Notice of Appeal. The Court therefore **GRANTS** Bonilla-Siciliano's Petition for a Writ of Habeas Corpus on this issue. "Under Eighth Circuit law, the appropriate remedy for such a failure is to re-sentence Movant,

11

'thus affording the [Movant] an opportunity to take a timely direct appeal.'" Toledo v. United States, No. 4:07CV1746JCH, 2009 WL 916225, *2 (E.D.Mo. Apr. 6, 2009)(citing Barger v. United States, 204 F.3d 1180, 1182 (8th Cir. 2000)). The Court will notify the parties once a new sentencing date has been scheduled.

**B. Did the District Court Fail to Make Factual Findings of Disputed Issues in the Pre-Sentence Report?**

Bonilla-Siciliano also alleges that the District Court failed to make factual findings of disputed issues in the Pre-Sentence Report. Bonilla-Siciliano states that he mailed a letter to the Court regarding the incorrect information, but the Judge never made any individual or factual findings.

However, during the Sentencing Hearing, the Court specifically asked Bonilla-Siciliano if he had objections to the Pre-Sentence Report. The Court then gave Bonilla-Siciliano an opportunity to express his concerns regarding the report. The Court then stated:

> You're entitled to have your day in court if you choose to do so and you chose to do so. We're not punishing you for that. What you did in the other courts, you did, and I'm sure your counsel has told you, you may have regrets or thought you were doing something different or doing it for a different reason, but it doesn't change the fact that you have those previous convictions, and they do get calculated eventually into this process.
> And the sentencing guidelines are not easy to understand for somebody who hasn't seen them or has not had to be involved with their interpretation, but it's pretty cut and dried here, you know. You got a certain offense level because of the crime that you committed, and that is enhanced because of your previous reentry into this country, and you have a criminal history. All of that counts toward the ultimate sentence.

(Sentencing Transcript, pp. 7-8).

The Court finds that Bonilla-Siciliano was given an opportunity to express his concerns regarding the information in the Pre-Sentence Report and the Court ruled on

12

his objections. Accordingly, the Court hereby **DENIES** Bonilla-Siciliano's Petition for a Writ of Habeas Corpus on this issue.

**C. Was Counsel Ineffective for Failing to Object to Pre-Sentence Report**

Bonilla-Siciliano states that at the Sentencing Hearing, Lozano refused to make objections prior to and during the hearing. In his affidavit, Lozano states that in a letter dated July 9, 2008, Bonilla-Siciliano advised him that "there's no need to object to the [probation] officer that wrote all that stuff," and instructed him to "Please stop at once making any decition [sic] on my Case." However, Lozano filed objections on July 14, 2008 to the Pre-Sentence Report's recommended denial of the 2-level acceptance of responsibility. The following day Lozano states he received a letter from Bonilla-Siciliano complaining that he was prejudiced by his failure to file a proper objection. Additionally, as noted above, Bonilla-Siciliano personally conveyed his objections to the Pre-Sentence Report to the Court during the sentencing hearing. During the sentencing hearing, he was allowed to explain his reasoning for his objections. Therefore, the Court does not find that Lozano was ineffective because he filed objections to the Pre-Sentence Report. Additionally, even if Lozano did not make the objections that Bonilla-Siciliano believed that he should have, Bonilla-Siciliano had an opportunity to make the objections himself, so he was not prejudiced.

## IV. CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Bonilla-Siciliano's Petition for a Writ of Habeas Corpus (Doc. # 1).

13

Because the Court found that Lozano was ineffective for failing to file a Notice of Appeal, the Court will resentence Bonilla-Siciliano. The Court will notify the parties once a date for the resentencing hearing has been scheduled.


Date: 03/01/10　　　　　　　　　　　　　　**S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri　　　　　　　　　　　Fernando J. Gaitan, Jr.
　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge